SNYDER & SNYDER, LLP
94 White Plains Road
Tarrytown, New York 10591
Tel.: (914) 333-0700
Fax: (914) 333-0743
Robert D. Gaudioso, Esq.
Jonathan D. Kaufman, Esq.
rgaudioso@snyderlaw.net
jkaufman@snyderlaw.net
*Attorneys for Plaintiff New York SMSA Limited Partnership d/b/a Verizon Wireless*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW YORK SMSA LIMITED PARTNERSHIP d/b/a VERIZON WIRELESS, <br><br> Plaintiff, <br><br> v. <br><br> THE TOWNSHIP OF MIDDLETOWN, THE TOWNSHIP COMMITTEE FOR THE TOWNSHIP OF MIDDLETOWN, TONY PERRY, in his official capacity as Mayor for the Township of Middletown, AMY CITRANO, in her official capacity as Planning Director for the Township of Middletown, ERIN URIARTE, in her official capacity as Zoning Officer for the Township of Middletown, JOSEPH MALONEY, in his official capacity as Township Engineer for the Township of Middletown, and PAUL DURNIEN, in his official capacity as Construction Official for the Township of Middletown, <br><br> Defendants. | Civil Action No. _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)** |

Plaintiff NEW YORK SMSA LIMITED PARTNERSHIP d/b/a VERIZON WIRELESS ("Plaintiff" or "Verizon"), by its attorneys, Snyder and Snyder, LLP, as and for its Complaint against defendants THE TOWNSHIP OF MIDDLETOWN (the "Township"), TONY PERRY, in his official capacity as Mayor for the Township of Middletown (the "Mayor"), THE TOWNSHIP COMMITTEE FOR THE TOWNSHIP OF MIDDLETOWN (the Township

Committee and the Mayor are collectively referred to herein as the "Committee"), AMY CITRANO, in her official capacity as Planning Director for the Township of Middletown (the "Planning Director"), ERIN URIARTE, in her official capacity as Zoning Officer for the Township of Middletown (the "Zoning Officer"), JOSEPH MALONEY, in his official capacity as Township Engineer for the Township of Middletown (the "Township Engineer"), and PAUL DURNIEN, in his official capacity as Construction Official for the Township of Middletown (the "Construction Official") (collectively, "Defendants"), respectfully alleges as follows:

## NATURE OF THE ACTION

1.    The nation's wireless infrastructure is a critical communications pathway extensively employed and heavily relied on by the public—including residents and businesses, the traveling public, emergency service providers, hospitals and health care professionals, law enforcement personnel, government officials, and the 911 North American emergency system. Both Congress and the Federal Communications Commission ("FCC") have emphasized the importance of a seamless nationwide wireless network and the need to allow wireless carriers to move quickly to construct needed facilities.

2.    This action arises from Defendants' unreasonable and unsupportable delay and effective denial (the "Effective Denial") of Verizon's application (the "Application") for consent to install one small wireless facility (the "SWF") within the Township's public right-of-way (the "ROW").

3.    The SWF meets the definition of "small wireless facility" as set forth at 47 CFR § 1.6002(l).

4.    The SWF is a personal wireless services facility that will provide personal wireless services ("Personal Wireless Services") and telecommunication services

("Telecommunications Services"), as those terms are defined in 47 U.S.C. §§ 332(c)(7)(C) and 153(53), respectively.

5.    The SWF is necessary to remedy a significant gap in reliable wireless service and to meet demand for Personal Wireless Services and Telecommunications Services in the Township.

6.    The SWF is the least intrusive means to remedy the significant gap in service.

7.    The Defendants' unreasonable delay and/or Effective Denial of the Application materially inhibits the provision of Personal Wireless Services and Telecommunications Services.

8.    Defendants have violated Section 704 of the Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "Act") and codified at 47 U.S.C. §§ 253(a) and 332(c) ("§ 253(a)" or "Section 253(a)" and "§ 332(c)" or "Section 332(c)[,]", respectively).   Specifically, Defendants have: (1) unreasonably delayed the Application; (2) effectively denied the Application without substantial evidence contained in the written record; (3) prohibited and/or effectively prohibited Verizon's provision of Personal Wireless Services and Telecommunications Services; and (4) imposed unreasonable and prohibitive application and code requirements, including unreasonable, excessive, and prohibitive application fees, escrow charges, and recurring annual fees, that materially inhibit or limit Verizon's ability to provide Personal Wireless Services and Telecommunications Services to the public; each of which individually warrants injunctive relief mandating that Defendants issue all required approvals for the construction of the SWF pursuant to the Act.

9.    Furthermore, the Effective Denial was arbitrary, capricious, and unreasonable in violation of New Jersey law.

10. Verizon respectfully requests that this Court enter a declaratory judgment that the Defendants' Effective Denial of the Application violates §§ 332(c) and 253(a), is preempted by the same and by the regulations and orders of the FCC, and is unlawful under New Jersey law.

11. Verizon further respectfully requests that this Court issue permanent injunctive relief: (a) reversing the Effective Denial and directing Defendants to issue all approvals and permits necessary to construct and operate the SWF, without the imposition of any further fees related to the installation of the SWF, and to limit the recurring annual fees for the SWF to $270.00; and (b) prohibiting Defendants and any officer, employee, or agent of the Defendants, from taking any further action that would prohibit or have the effect of prohibiting Verizon from providing Personal Wireless Services and Telecommunications Services to the Township with the SWF.

12. Verizon further respectfully requests that this Court enter an Order requiring the disgorgement and return of the fees paid by Verizon that are in excess of the FCC's presumptively reasonable limits, plus interest, from the date that Verizon submitted payment for such fees, and awarding Verizon any and all additional damages and interest to which Verizon is lawfully entitled, together with such other and further relief as the Court deems just and proper.

13. Verizon is entitled to an expedited review of this action pursuant to § 332(c)(7)(B)(v) of the Act, which provides that "[t]he court shall hear and decide such action on an expedited basis."

14. This action is ripe for determination under the Act and was timely filed.

## THE PARTIES

15. Verizon is a limited partnership formed under the laws of the State of New York, which has been authorized to do business in the State of New Jersey and maintains its principal

place of business at One Verizon Way, Basking Ridge, New Jersey 07920.  Verizon is licensed by the FCC to construct and operate personal wireless service facilities throughout the United States, including in the State of New Jersey and specifically the Township, in order to provide Personal Wireless Services and Telecommunications Services to the public.

16.     Defendant Township is a municipal corporation of the State of New Jersey with an address at 1 Kings Highway, Middletown, New Jersey 07748.

17.     Defendant Committee is the governing body of the Township that has been delegated with the authority to, among other things, manage access to the ROW in the Township, including for the installation and operation of small wireless facilities, adopt amendments to the Code of the Township (the "Code"), and enter into Small Wireless Facility ROW Use Agreements.  The Committee has an address at 1 Kings Highway, Middletown, New Jersey 07748.

18.     Defendant Planning Director is the duly authorized Planning Director for the Township that has been delegated with the authority to, among other things, review small wireless facility permit applications (such as the Application), act on such applications, and issue siting permits authorizing placement of small wireless facilities in the ROW.  The Planning Director has an address at 1 Kings Highway, Middletown, New Jersey 07748.

19.     Defendant Zoning Officer is the duly authorized Zoning Officer for the Township that has been delegated with the authority to, among other things, review applications for the installation of small wireless facilities (such as the Application).  The Zoning Officer has an address at 1 Kings Highway, Middletown, New Jersey 07748.

20.     Defendant Township Engineer is the duly authorized Township Engineer for the Township that has been delegated with the authority to, among other things, review applications

for the installation of small wireless facilities (such as the Application). The Township Engineer

has an address at 1 Kings Highway, Middletown, New Jersey 07748.

21.     Defendant Construction Official is the duly authorized Construction Official for

the Township that has been delegated with the authority to, among other things, review

applications for the installation of small wireless facilities (such as the Application). The

Construction Official has an address at 1 Kings Highway, Middletown, New Jersey 07748.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action pursuant to: (i) 47

U.S.C. § 332(c)(7)(B)(v) of the Act, because Verizon has been adversely affected and aggrieved

by Defendants' actions in violation of 47 U.S.C. §§ 332(c)(7)(B) and 253(a); and (ii) 28 USC §

1331, because this is a civil action that presents federal questions arising under the Act, and

Section 6409(a) and the implementing regulations of this provision, 47 C.F.R. § 1.6100(c).

23.     The Court has supplemental jurisdiction over all New Jersey state law claims

asserted herein pursuant to 28 U.S.C. § 1367(a).

24.     This Court has authority to issue declaratory judgment and injunctive relief

pursuant to 28 U.S.C. §§ 2201, 2202.

25.     This Court has personal jurisdiction over Defendants because Defendants are

domiciled within the state of New Jersey and because the claims stated herein arise out of the

acts and/or omissions committed by Defendants in the state.

26.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because: (1) the

property that is the subject of this action is located in the judicial district for the United States

District Court, District of New Jersey (the "District"); (2) a substantial part of the events or

omissions giving rise to this action occurred in the District; and (3) Defendants reside in the District.

27.    There is a live controversy between the parties that includes a dispute over whether the Effective Denial is consistent with federal and state law.

## The Important Federal Interests at Issue in this Case

28.    As set forth in the Act and the FCC rules, regulations, and orders promulgated pursuant thereto, Congress has declared a public need for wireless communication services such as Personal Wireless Services and Telecommunications Services to be deployed without delay to the public.

29.    By enacting the Act, Congress: (1) sought to ensure federal control over radio frequencies and over the licensing, frequencies of operations, and technical standards applicable to the use of such frequencies; and (2) intended to "provide for a pro-competitive, deregulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies to all Americans." H.R. Rep. No. 104-458, at 206 (1996) (Conf. Rep.); *see* 1996 U.S. Code Cong. and Adm. News, p. 10; *see also City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005).

30.    Section 151 of the Act establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. § 151. In furtherance of this goal, the Act authorizes the FCC to enforce the provisions of the Act in

order to protect the ability of Personal Wireless Services providers and Telecommunications Services providers to deploy their systems nationwide.

31.    The FCC regulates the provision of Personal Wireless Services and Telecommunications Services to the public.

32.    The FCC grants licenses to providers of Personal Wireless Services to use limited resources, frequencies, and spectrum allocated by the FCC for the provision of such services to the public.

33.    These essential wireless services are needed to place those living and passing through the area on equal footing with homes, businesses, and travelers throughout the state who have access to wireless communication and data services, in furtherance of the national policy goal that Congress and the FCC have repeatedly confirmed (i.e., to facilitate the rapid deployment of wireless access so as to ensure that all Americans have access to this critical utility).

34.    The Act, while preserving state and local authority over the placement, construction, or modification of wireless facilities, expressly preempts state or local governments from effectively prohibiting the provision of Telecommunications Services and Personal Wireless Services and from implementing decisions that are not supported by substantial evidence.

35.    Sections 332(c)(7)(B) and 253(a) of the Act impose a number of procedural and substantive limitations on local zoning decisions and requirements to ensure that those decisions and requirements do not frustrate the Act's goals of promoting competition, higher-quality services, and the rapid deployment of new telecommunications technologies.

36.    Section 332(c)(7)(B)(i) provides that:

The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof –

(I)     shall not unreasonably discriminate among providers of functionally equivalent services; and

(II)    shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

37.     Section 332(c)(7)(B)(ii) provides that:

A State or local government or instrumentality thereof shall act on any request for authorization to place, construct or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

38.     In furtherance of the national policy to expedite wireless deployment, the FCC adopted the Shot Clock Order,[1] defining specific "reasonable" timeframes within which state and local governments must act on wireless siting applications pursuant to Section 332(c)(7)(B)(ii). *Id.* at ¶ 32 ("a 'reasonable period of time' is, presumptively 90 days to process personal wireless service facility siting applications requesting collocations, and, also, presumptively, 150 days to process all other applications"); 47 C.F.R. §1.6003(c)(1)(ii) and (iv).

39.     On September 26, 2018, the FCC adopted its Declaratory Ruling and Third Report and Order, establishing two new Section 332 shot clocks for SWFs—"60 days for reviewing the application for attachment of a Small Wireless Facility using an existing structure and 90 days for the review of an application for attachment of a small wireless facility using a new structure." *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Inv.*, 33 F.C.C.R. 9088, 9092 ¶ 13 (2018) ("Small Cell Order"), *aff'd in relevant part sub nom*, *City of Portland v. U.S.*, 969 F.3d 1020 (9th Cir. 2020), *cert. denied sub nom*, *City*

---

[1] "Shot Clock Order" refers to *In the Matter of Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review and to Preempt Under Section 253 State and Local Ordinances that Classify All Wireless Siting Proposals as Requiring a Variance*, WT Docket No. 08-165, *Declaratory Ruling*, 24 F.C.C.R. 13994 (2009).

*of Portland, Oregon v. Fed. Commc'ns Comm'n*, 141 S. Ct. 2855 (2021); 47 C.F.R.
§1.6003(c)(1)(i) and (iii).

40.     Section 332(c)(7)(B)(iii) requires that:

> Any decision by a State or local government or instrumentality thereof to deny a
> request to place, construct, or modify personal wireless service facilities shall be
> in writing and supported by substantial evidence contained in a written record.

41.     Section 332(c)(7)(B)(iv) provides that:

> No State or local government or instrumentality thereof may regulate the
> placement, construction, and modification of personal wireless service facilities
> on the basis of the environmental effects of radio frequency emissions to the
> extent that such facilities comply with the Commission's regulations concerning
> such emissions.

42.     Section 332(c)(7)(B)(v) provides that:

> Any person adversely affected by any final decision or failure to act by a State or
> local government or any instrumentality thereof that is inconsistent with this
> subparagraph may, within 30 days after such action or failure to act, commence
> an action in any court of competent jurisdiction. The court shall hear and decide
> such action on an expedited basis.

43.     Section 253(a) provides that:

> No State or local statute or regulation, or other State or local legal requirement,
> may prohibit or have the effect of prohibiting the ability of any entity to provide
> any interstate or intrastate telecommunications service.

44.     Verizon provides the infrastructure, such as that at the SWF, for the provision of

mobile telephone and other Personal Wireless Services and Telecommunications Services in the

State of New Jersey in accordance with its FCC licenses.

45.     Since Congress amended the Act in 1996, there has been a sea change in the

manner in which Americans use wireless services.  According to the United States Department

of Health and Human Services and CTIA – The Wireless Association ("CTIA"), the percentage

of adults and children living in wireless-only households has increased from 62.5% and 73.6% in

the first half of 2020, respectively, to 76.0% and 86.8% as of the second half of 2023,

respectively.[2]  According to the Numbering Resource Utilization Forecast (NRUF) and CTIA, the number of mobile devices in use has increased from 279.6 million in 2008 to 398.4 million in 2016, to over 579 million mobile devices in use today.[3]  Furthermore, according to CTIA, wireless data usage has increased 331-fold from 2010 to 2024.[4]  These increases—combined with other changes in technology, applications, and usage—has generated a need for greater wireless coverage and capacity.

46.     Moreover, for Americans living in wireless-only homes and for those traveling outside of their homes, cell phones are often their only lifeline in emergencies.  The ability to reach 9-1-1 from one's wireless phone has become a vital public safety tool.  According to the National Emergency Number Association, "[a]n estimated 240 million calls are made to 9-1-1 in the U.S. each year.  In many areas, 80% or more are from wireless devices."[5]  Sufficient network coverage and capacity are crucial to ensure these calls can reliably be completed.

47.     To meet the policy goals of the Act, Verizon utilizes several licenses issued by the FCC to provide a myriad of wireless services through an interlocking network of facilities that permit the efficient reuse of frequencies allocated to it by the FCC.

---

[2] Wireless Substitution: Early Release of Estimates from the National Health Interview Survey, January-June 2020, https://www.cdc.gov/nchs/data/nhis/earlyrelease/wireless202102-508.pdf; Wireless Substitution: Early Release of Estimates from the National Health Interview Survey, July-December 2023, https://www.cdc.gov/nchs/data/nhis/earlyrelease/wireless202406.pdf.

[3] Annual Report and Analysis of Competitive Market Conditions with Respect to Commercial Mobile Services (2017) ¶ 19, p. 12; The Wireless Industry - Industry Data, https://www.ctia.org/the-wireless-industry/infographics-library (2025).

[4] 2023 Annual Survey Highlights, https://www.ctia.org/news/2023-annual-survey-highlights; 2025 Annual Survey Highlights, https://www.ctia.org/news/2025-annual-survey-highlights.

[5] https://www.nena.org/page/911Statistics.

48.     To advance the national policies enumerated in the Act and underscored by numerous FCC Declaratory Rulings, Verizon must construct and maintain a network of "cell sites," each of which consists of antennas and related electronic communications equipment designed to send and receive radio signals over their licensed frequencies.

## Facts Common to All Counts

49.     Verizon's network has a lack of capacity in the Township and Verizon seeks to deploy the SWF in order to provide additional wireless capacity in the Township.

50.     On September 5, 2023, the Committee adopted Ordinance 2023-3388, entitled "Ordinance Amending and Supplementing the Code of the Township of Middletown Establishing Procedures and Standards Regarding Deployment of Small Wireless Facilities within Public Rights-of-Way" (the "SWF Ordinance").[6]

51.     A copy of the SWF Ordinance is attached hereto as Exhibit A.

52.     Upon information and belief, the SWF Ordinance was suggested to the Township for adoption by a company named Munisite Networks ("Munisite").

53.     Munisite is not an FCC-licensed provider of Personal Wireless Services.

54.     Munisite is a third-party infrastructure company that seeks to construct infrastructure for the use of Personal Wireless Services providers.

55.     §492-2(A) provides that "[n]o person shall place a small wireless facility in any right-of-way without first filing for a small wireless facility siting permit application, in the form specified herein and in accordance with the procedures specified herein, with the Township Planning Director and obtain a siting permit therefore . . ."

56.     The term "right-of-way" is not a defined term in the SWF Ordinance.

---

[6] Hereinafter "§492-" refers to certain sections of the SWF Ordinance.

57.     Upon information and belief, the Township intended for the term "right-of-way" to be synonymous with the term "Public Right-of-Way" which is defined by §492-1 to mean "the surface, airspace above the surface and the area below the surface of any street, road, highway, lane, alley, boulevard or drive, including the sidewalk, shoulder and area for utilities owned by the Township."

58.     §492-2(A) also provides that:

. . . [u]pon approval of the siting permit application, the siting permit authorizing placement of a small wireless facility in a public right-of-way shall not be issued by the Township Planning Director to any Applicant unless:

  1)  All siting permit application fees and escrow fees, as established herein have been paid;

  2)  All other governmental permits or other governmental approvals that are required for the deployment(s) proposed by the applicant's siting permit application under the New Jersey Uniform Construction Code Act, N.J.S.A. 52:27D-19, et seq., and the administrative regulations adopted thereunder, Chapter 428, Article I, Street Excavations, of the Code[;] and

  3)  The applicant has entered into a "Right-of-Way Use Agreement" the approved form of which is set forth in "Appendix A" to this chapter[.]

59.     No form of "Right-of-Way Use Agreement" is attached to the SWF Ordinance.

60.     §492-3(A) provides that "no application for a small wireless facility siting permit shall be approved if the application proposes the deployment of a small wireless facility upon an existing structure in a right-of-way unless the structure is one of the types of Smart Poles and such Smart Pole specifically is designed to accommodate the reasonable and customary equipment necessary for a small wireless facility installation which will accommodate at least three carriers per small wireless facility deployment[.]"

61.    §492-3(B) states that "[n]o small wireless facility shall be installed upon any new structure within any right-of-way unless the new structure is one of the types of Smart Poles as defined in this ordinance. A replacement pole is a new structure."

62.    §492-1 defines "Smart Pole" as:

[a] decorative utility pole that conceals three or more Small Wireless Facility installation(s) and may include other features such as street lighting, 911 call service access, public access Wi-Fi and surveillance cameras. A Smart Pole must allow for multiple occupants and allow space for municipal use for other services and/or equipment. Smart Poles shall neither have external latches, external hinges, external cabling, or other attachments. The pole should be made of an inherently rust-resistant material (i.e. aluminum alloys or stainless steel).

63.    §492-3(C) provides "[n]o application for a small wireless facility siting permit shall be approved if the application proposes the deployment of a small wireless facility in an area other than those specified location set forth within the Township's Wireless Siting Plan, which can be found on file with the Township Planning Director. . ."

64.    §492-5(A) mandates that "[w]ithin 10 days of receiving an application, the Township's Planning Director shall determine and notify the applicant whether its application is complete, and if incomplete, what specific information is missing."

65.    §492-5(C)(2) mandates that "[t]he Township shall make its final decision to approve or deny a complete application within . . . 90 days from the submission of a complete application to install a small wireless facility upon one or more new structure[s]."

66.    §492-5(F) provides that ". . . [n]o approval or consent granted, or siting permit issued, pursuant to this ordinance shall confer any exclusive right, privilege, license or franchise to occupy or use any public right-of-way within the Township for the delivery of telecommunications services or for any other purpose."

67.    §492-6 provides "[n]o siting permit issued under this ordinance shall be valid for a period longer than 12 months unless construction has actually begun and continuously and diligently pursued until [] completion[.]"

68.    With respect to fees, §492-8(A)(2) mandates, "For applications that include the installation of a new structure within a [ROW], the application fee shall be $1,000 for up to five small wireless facilities with an additional $100 for each small wireless facility beyond five."

69.    §492-9(A)(2) requires that "[i]n addition to the applications fees, all applications for approval and issuance of a small wireless facility siting permit shall be accompanied by an escrow fee as follows: . . . [f]or applications whose proposed small wireless facility deployment(s) will require a street opening permit pursuant to Chapter 428, Streets and Sidewalks, Article 1, Street Excavations, as amended and supplemented: $7,500."

70.    §492-10 mandates that an "application whose siting permit includes the installation of any new Smart Pole structure of any of these types defined by this ordinance shall provide the Township with access to space within the Smart Pole structure for the purposes of deploying the Township's own equipment including but not limited to, public access Wi-Fi, 911 call service or security cameras[.]"

71.    The siting plan adopted by the Township as part of its SWF Ordinance is attached hereto as Exhibit B.

72.    On January 8, 2025, the office of Edward W. Purcell, Esq., Verizon's siting counsel with respect to the Application ("Verizon's Siting Counsel"), submitted an Open Public Records Act ("OPRA") request to the Township for a copy of the Township's model ROW use agreement referenced in the SWF Ordinance.

73.    The Township alleges that it received the OPRA request on January 10, 2025.

74.     On January 22, 2025, the Township requested a seven (7) business day extension to provide a copy of the Township's model right-of-way agreement allegedly "[d]ue to the need for Attorney review[.]"

75.     On January 31, 2025, the Township requested an additional seven (7) business day extension to provide a copy of the Township's model right-of-way agreement allegedly "[d]ue to the need for Attorney review[.]"

76.     On February 11, 2025, the Township provided a copy of its model right-of-way agreement, which is attached hereto as Exhibit C.

77.     On or about May 1, 2025, Verizon's Siting Counsel left a voicemail for the Planning Director requesting a copy of the small wireless facility siting permit application forms, to the extent that same exist.

78.     The Planning Director did not respond to Verizon's Siting Counsel's request or otherwise provide Verizon with a copy of the requested application forms.

79.     Notwithstanding the Planning Director's failure, Verizon prepared the Application to include all of the information required under §492-4(B), entitled Application Form.

80.     On July 31, 2025, Verizon submitted the Application to the Planning Director for approvals to place the SWF in the municipal ROW near the terminus of Brasch Boulevard, just adjacent to Middletown Highschool South. The nearest street address to the SWF location is 37 Brasch Boulevard, Middletown, New Jersey.

81.     The residential area adjacent to the SWF location has only single-family homes and mostly below-ground utilities.

82. A copy of the Application filing is attached hereto as Exhibit D and includes the following documents:

(1)    Construction drawings prepared by Scherer Design Group, dated April 9, 2025;

(2)    Survey prepared by RWV Surveying, dated November 4, 2024;

(3)    Certifications of Athony Egidio, Andrew Petersohn, and Edward W. Purcell, Esq.;

(4)    Photographs of Munisite "Smart Pole" located in Point Pleasant Beach;

(5)    Photo simulation by Scherer Design Group. dated July 24, 2025;

(6)    Partially executed right-of-way agreement;

(7)    Aerial exhibit; and

(8)    Addendum.

83. The Application was received by the Township on August 1, 2025.

84. The Application specifically stated that the Township would have ninety (90) days to act on the Application pursuant to the applicable FCC shot clock set forth at 47 CFR §1.6003(d).

85. The Addendum had four parts, Sections A through D—Section (A) set forth the federal regulatory framework that governs how the Township must process the Application; Section (B) provided an overview of the proposed SWF location and certain information requested by the SWF Ordinance; Section (C) raised certain objections to the SWF Ordinance; and Section (D) set forth certain requested waivers from the SWF Ordinance.

86. First, Verizon requested a waiver from the SWF Ordinance's requirement that the SWF be located within a "Smart Pole."

87. Verizon made that waiver request because a new wooden utility pole would be smaller and less intrusive to the aesthetics of the surrounding areas.

88.    A "Smart Pole" capable of concealing "three or more small wireless facility installations" would be taller and thicker than the proposed SWF pole.

89.    Also, its metallic finish would not match the surrounding residential areas that are wooded and, for the most part, have underground utilities.

90.    Verizon stated that a shorter, wooden pole better matches the character of the neighborhood and is more appropriate in this setting.

91.    The Application included a photo simulation of the SWF.  *See* Ex. D.

92.    The Application also included a photograph of a "Smart Pole" that was erected in Point Pleasant Beach by Munisite under a similar ordinance to the SWF Ordinance. *See id.*

93.    Verizon stated that a wooden utility pole, as opposed to such a "Smart Pole," would be preferable in this location but that, as a condition of approval and should another carrier wish to collocate on this pole, Verizon would, at the Township's option, either permit collocation onto the pole itself or would agree to replace the existing pole with the required "Smart Pole."

94.    In sum, Verizon demonstrated that such a waiver can be granted in order to preserve the area's aesthetics but also in a way to ensure that additional poles would not proliferate in said area.

95.    Second, Verizon requested a waiver from the Township's siting plan.

96.    As set forth above, Verizon seeks to remedy certain capacity issues in the area of Middletown Highschool South.

97.    The only approved location on the siting plan that would allow for Verizon to meets its coverage/capacity needs in the area was not located within the Township's ROW but

on Middletown Township School District property in the parking lot of Middletown Highschool South.

98.    The Application included an aerial showing the approved location, entitled "Middletown 115" in the Township's siting plan, and the proposed SWF location. *See id*.

99.    The proposed SWF location is approximately 125 feet from the Middletown 115 location.

100.    Because the Middletown 115 location is not within the Township's ROW, the Township cannot authorize Verizon's use of said property without the consent of the School District and some type of formal land use approval/courtesy review pursuant to N.J.S.A. 40:55D-31(a).

101.    Because the Township had no legal authority to grant Verizon the ability to construct a wireless facility at the Middletown 115 location, Verizon asked for a waiver to permit it to construct the SWF at the proposed location in the ROW near the terminus of Brasch Boulevard.

102.    On August 1, 2025, the date that the Application was received by the Township, Verizon' Siting Counsel left a voicemail for the Planning Director requesting to discuss the Application.

103.    Verizon's Siting Counsel sent a follow-up confirmation email to the Planning Director that stated:

> Following up on my voicemail earlier today. Please give me a call at your earliest convenience. I'd like to have a word about the pole design waiver request and your feelings on same. I think Verizon Wireless can be flexible on that request— but it seems to me a smaller wooden pole would fit in better in the subject area than a much larger metal pole, i.e. like the example I gave you from Point Pleasant Beach. They had a similar ordinance to Middletown and were pretty unhappy with that design. I'd just like to resolve that issue at the outset.

104.    The Planning Director did not provide a response to Verizon's Siting Counsel.

105.    On August 4, 2025, Brian M. Nelson, Esq., Township Attorney (the "Township Attorney"), advised Verizon's Siting Counsel via email as follows:

> We cannot process this application because this right of way is already committed under an agreement with Munisite.  You may contact Matthew Watkins at:
>
> Matt Watkins
> [telephone number redacted]
> [e-mail address redacted]
>
> When our historic commission received notice about this forthcoming application by one of Verizon's vendors, we advised them of this, but received no response.

106.    The Township Attorney's August 4, 2025 email did not deem the Application incomplete.

107.    In fact, Defendants never deemed the Application incomplete or otherwise identified any specific missing information, and certainly not within "the 10th day after submission [of the Application]" as is required by 47 C.F.R. §1.6003(d) and §492-5(A).

108.    Upon information and belief, Munisite does not have a permit to construct a small wireless facility, or any other wireless facility, at the Middletown 115 location or at the location of the proposed SWF in the ROW.

109.    In fact, upon information and belief, Munisite does not have a permit to construct a small wireless facility, or any other wireless facility, at any location in the Township.

110.    Upon information and belief, Munisite does not have an agreement with the Township that gives it exclusive rights to deploy small wireless facilities in the ROW.

111.    Such an exclusive agreement would be in violation of §492-5(F).

112.    §492-5(F) provides in pertinent part that "[n]o approval or consent granted, or siting permit issued pursuant to this chapter shall confer any exclusive right, privilege, license or

20

franchise to occupy or use any public [ROW] within the Township for the delivery of telecommunications services or for any other purpose."

113.    On September 3, 2025, Verizon's Siting Counsel sent a letter to the Township Attorney explaining the applicable federal law and that, in part, the applicable ninety (90) day shot clock for the Township to process the Application had not been tolled and that same had to be acted on by October 30, 2025 (the "September 3, 2025 Letter").  A copy of the September 3, 2025 Letter is attached hereto as Exhibit E.

114.    Thereafter, Verizon, the Township, and Munisite began to discuss various options/locations to obtain an approval for an SWF that would meet Verizon's needs.

115.    The Township failed to act on the Application by October 30, 2025.

116.    On November 10, 2025, Verizon's Siting Counsel sent an email to the Township Attorney: (1) attaching a proposed tolling agreement; and (2) stating:

> In order for Verizon Wireless to continue to be able to work out the issue of obtaining an approval for the Middletown Township ROW with respect to its 7/31/25 filing, I have attached a proposed tolling agreement. I would ask that you sign same and return back to me as soon as possible.
>
> I called this morning to discuss but your legal assistant advised you were unavailable.
>
> If you have any questions or would like to discuss, please contact my office.

117.    On November 12, 2025, Verizon' Siting Counsel sent a follow-up email to the Township Attorney requesting that he "advise when [he] expect[s] to send back an executed tolling agreement."

118.    The Township Attorney did not respond to Verizon's Siting Counsel's November 10th or 12th emails.

119.    On November 14, 2025, Verizon's Siting Counsel called the Township Attorney to discuss the status of the tolling agreement; however, the Township Attorney's office advised that the Township Attorney was in a meeting.

120.    Accordingly, Verizon's Siting Counsel left a voicemail for the Township Attorney and promptly sent a follow-up email to the Township Attorney that stated:

> . . . following up on my phone call of just now. Was told you were in a meeting. Can you please call me when you have a moment? You can call my cell. [phone number omitted]
>
> I really need to speak with you about that tolling agreement. If Verizon Wireless is going to move forward with the Township and Munisites-that tolling agreement needs to be executed.

121.    On November 14, 2025, the Township Attorney responded to Verizon' Siting Counsel via email, stating:

> I have reviewed the proposed Tolling Agreement with my client. I can't sign it as drafted as no application was ever accepted or is on file with the Township.  That being said, the Township is willing to work with your client on the location of the pole.  Understanding that your client does not want to engage with the school district for various reasons, the Township's request is that the location be as far as possible from the residence son [sic] Brasch.  It is our understanding that there is [an] additional right of way area closer to the school than the proposed location where the pole can be located without impacting service.  Also, my client inquired about why your client cannot site [sic] co-locate on an existing cell tower in the vicinity of the school property—I am guessing there's a technical reason, but they would like to know if that would be an option.

122.    On November 16, 2025, Verizon' Siting Counsel responded to the Township Attorney via email: (1) attaching a copy of the September 3, 2025 Letter; and (2) stating:

> I am attaching my September 3, 2025 letter.
>
> Not to be unduly adversarial, and in order for me to explain the Township's position to Verizon Wireless so that it can weigh how to respond, can you please explain the legal basis that you believe the arguments made by my September 3,2025 letter are incorrect and that why, under the applicable federal law laid out therein, that the 90[-day] shot clock did not commence (and expire) with respect to the application filed with the Township of Middletown on August 1, 2025?

123.    On November 17, 2025, the Township Attorney responded via e-mail, stating:

If you want to litigate that's fine, but I am not doing that over email by replying to self-serving letters. If you want to work with the Township to find a location for this pole that works, which is what my email was trying to advance, then lets [sic] do that. I think that would be a more efficient use of everyone's time.

124.    Thereafter, despite additional communications between Verizon' Siting Counsel and the Township Attorney, the Township refused to sign the proffered tolling agreement in order to avoid this litigation.

125.    To date, the Township has not acted on the Application.

**IRREPARABLE INJURY, PUBLIC INTEREST AND THE BALANCE OF HARDSHIPS**

126.    Verizon has demonstrated the need for the injunctive relief requested herein, including an order directing the Defendants to issue all necessary approvals for Verizon to construct and operate the SWF.

127.    As a result of the Defendants' actions, Verizon, its customers, and the public have been and will continue to be damaged and irreparably harmed absent the relief requested herein.

128.    The injury to Verizon affects: (a) its ability to provide its customers with the high-quality, reliable services they need and rightfully expect; (b) its ability to compete with other providers of Personal Wireless Services and Telecommunications Services; (c) the full use of its existing FCC licenses and business investments; and (d) the goodwill of its customers and its business reputation.

129.    The harm that Verizon has suffered and continues to suffer is not reasonably susceptible to accurate calculation and cannot be fully and adequately addressed through an award of damages.

130.    Moreover, the public interest in promoting competition in the telecommunications arena and the rapid deployment of this evolving technology—the express goal of the Act—has been and will continue to be irreparably harmed by the Defendants' unlawful acts.

131.    In addition, wireless telecommunications are an important component of public safety and emergency response systems, and provide a vital alternative to traditional landlines during times of public crisis.  By preventing Verizon from installing the SWF, which is necessary to provide reliable Personal Wireless Services and Telecommunications Services, the Defendants are causing irreparable harm to the public with deprivation or delay of reliable emergency communications.

132.    In contrast to the immediate and irreparable injury being suffered by Verizon, its customers, and the public, the Defendants will suffer no significant injury if the Court issues the requested injunctive relief.  Moreover, Verizon has met all of the requirements for the approvals it seeks under controlling local codes, state and federal laws, and/or precedent.

## ALLEGATIONS SUPPORTING DECLARATORY RELIEF

133.    A present and actual controversy has arisen and now exists between the parties regarding their respective legal rights and duties.  Verizon contends that the Defendants' actions are in violation of the Act and New Jersey state law and that it is entitled to all of the approvals necessary to proceed with the project.

134.    Verizon, its customers, and the public have been and will continue to be adversely affected by the Defendants' unlawful acts and any further delay in approval and construction of the SWF.

135.    Accordingly, declaratory relief is appropriate and necessary to adjudicate the extent of Verizon's rights and the Defendants' duties and authority.

## COUNT I

### Violation of 47 U.S.C. § 332(c)(7)(B)(ii) and the FCC Shot Clock – Unreasonable Delay of the Application

136.    Verizon realleges and incorporates by reference the allegations contained in all preceding paragraphs as if fully restated herein.

137.    47 U.S.C. §332(c)(7)(B)(ii) provides that "[a] state or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities *within a reasonable period of time* after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request." (Emphasis supplied).

138.    Under the FCC's Small Cell Order, which operates with the force of law, a "reasonable period of time for action on . . . an application to deploy a Small Wireless Facility using a new structure [is] 90 days." 47 C.F.R. §1.6003(c)(1)(iii).

139.    The Shot Clock Order, which also operates with the force of law, establishes that if a local government, such as the Defendants, does not act upon an application within the designated time frame, "then a failure to act" has occurred and the applicant may seek judicial relief pursuant to 47 U.S.C. §332(c)(7)(B)(v). 24 F.C.C.R. 13994, at ¶32.

140.    On August 4, 2025, Defendants advised Plaintiff that "[w]e cannot process this application because the right of way is already committed under an agreement with Munisite."

141.    In other words, Defendants refused to process the Application because they had allegedly granted Munisite exclusive franchise rights for physical access to the ROW.

142.    Defendants did not "notif[y Plaintiff] on or before the 10th day after submission that the [A]pplication [wa]s materially incomplete" and failed to identify "the specific rule or

regulation creating the obligation to submit" that made the Application incomplete, as is required to "restart [the shot clock date calculation] at zero."  47 C.F.R. §1.6003(d).

143.    While Plaintiff subsequently proposed that the parties enter into a tolling agreement, Defendants declined, claiming that "no application was ever accepted or is on file with the Township."

144.    Accordingly, the applicable Shot Clock, *i.e.*, the deadline for Defendants to act on the Application, expired on October 30, 2025.

145.    Defendants failed to issue a written decision or otherwise act on the Application by October 30, 2025.

146.    In fact, as of the present date, Defendants have yet to issue a written decision or otherwise act on the Application.

147.    Accordingly, Defendants failed to take a final action on the Application prior to the expiration of the applicable Shot Clock. *T-Mobile Ne. LLC v. City of Wilmington, Delaware*, 913 F.3d 311, 323 (3d Cir. 2019) ("a denial must be in writing to be a final action, the issuance of [which] is the government 'act' ruled by the shot clock.").

148.    Defendants' failure to take such final action within the designated time frame is a violation of the Act.  *ExteNet Sys. v City of E. Orange*, No. 2:19-cv-21291 (WJM), 2020 U.S. Dist. LEXIS 231126, at *9-10 (D.N.J. Dec. 9, 2020) ("if the locality does not issue a final written decision within the presumptively reasonable time period, the locality's inaction constitutes a failure to act") (citing 47 U.S.C. § 332(c)(7)(B)(v); Small Cell Order at ¶ 117).

149.    Accordingly, the Defendants' actions and failures to act must be set aside and enjoined by the Court.  Further, this Court should exercise its equitable power to issue an order

directing the Defendants to issue all local permits and approvals required to construct and operate the SWF without the imposition of any further fees related to the installation of the SWF.

## COUNT II

**Violation of 47 U.S.C. § 332(c)(7)(B)(iii) – The Effective Denial of the Application Was Not Based on Substantial Evidence in the Written Record**

150.    Verizon realleges and incorporates by reference the allegations contained in all preceding paragraphs as if fully restated herein.

151.    Section 332(c)(7)(B)(iii) of Title 47 of the U.S. Code provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and *supported by substantial evidence contained in a written record*." (Emphasis added).

152.    The Application satisfied the criteria specified in the SWF Ordinance, state law, and federal law for the requested approvals and waivers.

153.    Defendants' failure to issue a written decision or otherwise act on the Application prior to the expiration of the applicable Shot Clock on October 30, 2025 constitutes an effective denial of the Application.

154.    The Effective Denial eschews the actual factual evidence in the administrative record and is in contradiction to the substantial and credible evidence presented by Verizon and its experts.

155.    The Effective Denial is not in writing and is inconsistent with the criteria specified in the SWF Ordinance and under federal and state law.

156.    The written record does not contain substantial evidence that would lead an objective and reasonable person to deny the Application.

157.    The Effective Denial is in violation of and preempted by 47 U.S.C. § 332(c)(7)(B)(iii) and must be set aside and enjoined by the Court.  Further, this Court should exercise its equitable power to issue an order directing Defendants to issue all local permits and approvals required to construct and operate the SWF without the imposition of any further fees related to the installation of the SWF.

## COUNT III

**Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) – Effective Prohibition of Service**

158.    Verizon realleges and incorporates by reference the allegations contained in all preceding paragraphs as if fully restated herein.

159.    Section 332(c)(7)(B)(i)(II) of Title 47 of the U.S. Code provides that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . *shall not prohibit or have the effect of prohibiting* the provision of personal wireless services."  (Emphasis added).

160.    Federal district courts review "effective prohibition" claims under the Act on a *de novo* basis, and such review is not limited to the record below.

161.    The FCC has confirmed that a state or local legal requirement constitutes an effective prohibition under Section 332 of the Act if it "materially limits or inhibits" a provider's ability to engage in any of a variety of activities related to its provision of a covered service.[7] The FCC explained that "[t]his test is met not only when filling a coverage gap, but also when densifying a wireless network, introducing new services or otherwise improving service capabilities."[8]

---

[7] Small Cell Order, FCC 18-133, ¶ 40 n. 95.
[8] *Id*. at ¶ 37 (internal citations omitted).

162.    Adopting the FCC's materially inhibit standard, this Circuit further explained that "not only does insufficiency in coverage ordinarily entitle a provider to [zoning approvals] but so does insufficiency in network capacity, 5G services, or new technology." *Cellco P'ship v. White Deer Twp. Zoning Hearing Bd.*, 74 F.4th 96, 106 (3d Cir. 2023).

163.    The SWF is the least intrusive means for Verizon to densify its network, introduce new services, and improve service capabilities in the Township.

164.    The Effective Denial violates Section 332 because it materially inhibits Verizon from providing Personal Wireless Services in the Township and Verizon's ability "to provide existing services more robustly, or at a better level of quality, all to offer a more robust and competitive wireless service for the benefit of the public."[9]

165.    The Effective Denial effectively prohibits the provision of Personal Wireless Services in violation of § 332(c)(7)(B)(i)(II) of the Act. Accordingly, the Effective Denial must be set aside and enjoined by the Court.  Further, this Court should exercise its equitable power to issue an order directing Defendants to issue all local permits and approvals required to construct and operate the SWF without the imposition of any further fees related to the installation of the SWF.

## COUNT IV
### Violation of 47 U.S.C. § 253(a) – Prohibition of Service

166.    Verizon realleges and incorporates by reference the allegations contained in all preceding paragraphs as if fully restated herein.

167.    47 U.S.C. § 253(a) provides that "[n]o state or local statute or regulation, or other State or local legal requirement, may *prohibit or have the effect of prohibiting the ability* of any entity to provide any interstate or intrastate telecommunications service."  (Emphasis added).

---

[9] Small Cell Order at ¶ 40 n. 95.

168.    Section 253 also prohibits State or local authorities from erecting barriers that may prohibit or may have the effect of prohibiting the ability of any entity to provide Telecommunications Services, including taking action or inaction that results in an unreasonable delay in the deployment of the provider's facilities and provision of telecommunications services. *Id.*

169.    Section 253(c) of the Act limits the power of state and local government authorities to "manage the public rights-of-way" on a "competitively neutral and nondiscriminatory basis."

170.    The FCC has confirmed that a state or local legal requirement constitutes a prohibition under Section 253 of the Act if it "materially limits or inhibits" a provider's ability to engage in any of a variety of activities related to its provision of a covered service.[10]  The FCC explained that "[t]his test is met not only when filling a coverage gap, but also when densifying a wireless network, introducing new services or otherwise improving service capabilities."[11]

171.    This Circuit has further explained that "not only does insufficiency in coverage ordinarily entitle a provider to [zoning approvals] but so does insufficiency in network capacity, 5G services, or new technology."  *Cellco P'ship v. White Deer Twp. Zoning Hearing Bd.*, 74 F.4th 96, 106 (3d Cir. 2023).

172.    The SWF is the least intrusive means for Verizon to densify its network, introduce new services, and improve service capabilities in the Township.

173.    The Effective Denial violates Section 253 because it materially inhibits Verizon from providing telecommunications services in the Township and materially inhibits Verizon's

---

[10] Small Cell Order, FCC 18-133, ¶¶ 34-40.

[11] *Id*. at ¶ 37 (internal citations omitted).

ability "to provide existing services more robustly, or at a better level of quality, all to offer a more robust and competitive wireless service for the benefit of the public."[12]

174.    Furthermore, the facts clearly demonstrate that Defendants, through their actions and inactions, have erected barriers that have unreasonably delayed the deployment of the SWF and prohibited and effectively prohibited Verizon's ability to provide Personal Wireless Services and Telecommunications Services.

175.    Here, like in *White Deer*, "the totality of factors" must be considered, and in weighing these factors, it is clear that Defendants have "materially inhibited" Verizon's ability to densify its network and "to provide existing services more robustly, or at a better level of quality, all to offer a more robust and competitive wireless services for the benefit of the public" in and around the Township because the Township's "regulatory structure [as same exists in the subject case] gives an advantage" to incumbent "providers" and constricts Verizon's ability to compete in a "fair and balanced regulatory environment."[13]

176.    Furthermore, the SWF Ordinance on its face is in violation of and preempted by Section 253(a) because the SWF Ordinance contains several provisions that impose unfair, unreasonable, and unlawful requirements, and thus are not within the limited authority reserved to the Township under Section 253(c).

**Preempted Siting Requirements**

177.    The SWF Ordinance mandates that "[n]o siting of a small wireless facility shall be permitted within 500 feet of another small wireless facility[;]" and that "[n]o more than one [small wireless facility] pole shall be permitted per intersection or block if the siting plan calls

---

[12] Small Cell Order at ¶ 40 n. 95.

[13] *Id.* at ¶ 39; *White Deer*, 74 F.4th at 104.

for the deployment of a small wireless facility at any location other than an intersection[;]" however, such restrictive siting requirements violate the Act. *Small Cell Order* at ¶ 91 ("municipal requirements ... mandating that facilities be sited ... some ... minimum distance, away from other facilities ... may violate 253(a)"); *Crown Castle Fiber LLC v. City of Pasadena*, 618 F. Supp. 3d 567, 587 (S.D. Tex. 2022), *aff'd*, 76 F.4th 425 (5th Cir. 2023) (holding a 300-foot minimum "spacing requirement effectively prohibits [the] provi[sion of] telecommunications services" and "[t]hus . . . is preempted by [§] 253(a)").

178.    Further, "local jurisdictions do not have the authority . . . to dictate the design of a provider's network." Small Cell Order at ¶ 36 n. 84 (*citing Bastian v. AT&T Wireless Services*, 205 F.3d 983, 89 (7th Cir. 2000)).

179.    The SWF Ordinance provision prohibiting "the deployment of a small wireless facility in an area other than those specific locations set forth within the Township's Wireless Siting Plan" is in violation of Section 253(a) because such limitation effectively dictates the design of Verizon's network.

180.    The SWF Ordinance also unlawfully mandates Township access to "any new smart pole structure[.]"

181.    Such a requirement is an unlawful *quid pro quo* requirement. *Small Cell Order* at ¶ 82 ("another type of restriction that imposes substantial burdens on providers, but does not meaningfully advance any recognized public-interest objective, is an explicit or implicit quid pro quo in which a municipality makes clear that it will approve a proposed deployment only on condition that the provider supply an 'in-kind' service or benefit to the municipality").

182.    Furthermore, the SWF Ordinance provides that the Township "shall reimburse[] the applicant" only for the "costs of providing electricity to the components used by the

Township[.]" The Township would thus not reimburse Verizon for the upfront cost of the infrastructure deployment itself.

**Preempted Fee Requirements**

183.    The fee provisions set forth in the SWF Ordinance effectively prohibit the provision of wireless services.

184.    A local fee has the effect of prohibiting service in violation of Sections 253(a) and 332(c)(7)(B)(i)(II) if it materially inhibits the ability to compete in a fair and balanced legal and regulatory environment. *Small Cell Order* at ¶¶ 37, 43-80.

185.    Fees imposed by state or local governments for the deployment of small wireless facilities, including ROW access fees, application fees, and review fees "violate Sections 253 or 332(c)(7) unless [all of] these conditions are met: (1) the fees are a reasonable approximation of the state or local government's costs, (2) only objectively reasonable costs are factored into those fees, and (3) the fees are no higher than the fees charged to similarly-situated competitors in similar situations." *Small Cell Order* at ¶ 50. In addition, "fees imposed by localities, above and beyond the recovery of localities' reasonable costs, materially and improperly inhibit deployment that could have occurred elsewhere." *Id.* at ¶ 60.

186.    To assist local governments when creating fee structures for small wireless facilities such as the SWFs, the FCC set the following fees as the presumptive limit for which local fees would not effectively prohibit the provision of wireless services under § 253 and 332(c)(7):

  a.  $500 for non-recurring fees, including a single up-front application that includes up to five [SWFs], with an additional $100 for each small wireless facility beyond five, or $1,000 for non-recurring fees for a new pole (i.e., not a collocation) intended to support one or more [SWFs]; and

     b.   $270 per [SWF] per year for all recurring fees, including any possible ROW access fee or fee for attachment to municipally-owned structures in the ROW.

*Id.* at ¶ 79.

187.    The SWF Ordinance requires not only the payment of $1,000.00 for the application fees itself, but also an initial $7,500.00 escrow deposit for the SWF, which must be "replenish[ed] . . . to 100%" if "at any time during the application review process 75% of the escrow . . . has been expended[,]" without any cap.

188.    Accordingly, the fees set forth in the SWF Ordinance far exceed the FCC's presumptively reasonable fee limits, and thus materially inhibit the provision of wireless services.

189.    Upon information and belief, the requirements set forth in the SWF Ordinance do not apply to any other telecommunications utilities, and thus the SWF Ordinance is not competitively neutral.

190.    For the foregoing reasons, the SWF Ordinance effectively prohibits the provision of service, and is thus in violation of and preempted by Section 253(a) of the TCA, and must be set aside and enjoined on that basis.

191.    Furthermore, the SWF Ordinance and application review processes and criteria, as applied by Defendants, and the resulting Effective Denial of the Application obstructed, prevented, and barred entry to the deployment of Verizon's Telecommunications Services in the Township.

192.    Defendants' refusal to process the Application because they had allegedly granted Munisite exclusive franchise rights for physical access to the ROW materially inhibited the provision of telecommunications services because "nonexclusivity is required by the TCA." *TCG NY, Inc. v. City of White Plains*, 125 F. Supp. 2d 81, 93 (S.D.N.Y. 2000), *aff'd in pertinent part*,

*TCG NY, Inc. v. City of White Plains*, 305 F.3d 67, 81 (2d Cir. 2002); *see also IMO Petition of the State of Minnesota for Declaratory Ruling Regarding the Effect of Section 253 on an Agreement to Install Fiber Optic Wholesale Transport Capacity in State Freeway Right-of-Way*, 14 FCC Rcd. 21697, 21707 (holding an exclusive franchise agreement for use of a ROW violates Section 253(a)).

193.    Furthermore, upon information and belief, Defendants' awarding of exclusive franchise rights to Munisite will result in Verizon having to pay to Munisite recurring fees that far exceed the $270.00 annual limit set by the FCC.

194.    Defendants' prohibitive SWF Ordinance, application review processes and criteria, escrow and application fees, and resulting Effective Denial are in violation of and preempted by Section 253(a) of the Act, and must be set aside and enjoined on that basis. Further, this Court should exercise its equitable power to issue an order directing Defendants to issue all local permits and approvals required to construct and operate the SWF without the imposition of any further fees related to the installation of the SWF, and to limit the annual fees for the SWF to $270.00.

## COUNT V

### The Effective Denial of the Application Was Arbitrary, Capricious, and Unreasonable in Violation of New Jersey State Law

195.    Verizon realleges and incorporates by reference the allegations contained in all preceding paragraphs as if fully restated herein.

196.    "Municipal action will be overturned by a court if it is arbitrary, capricious or unreasonable." *Bryant v. City of Atlantic City*, 309 N.J. Super. 596, 610 (App. Div. 1998).

197.    The undisputed evidence presented by Verizon and its experts demonstrated that Verizon is entitled to the requested approvals for the installation of the subject SWF because the

Application and SWF met all of the applicable requirements of the SWF Ordinance and state and federal laws.

198.    Defendants' failure to issue a written decision or otherwise act on the Application prior to the expiration of the Applicable Shot Clock Date on October 30, 2025 constitutes an effective denial of the Application.

199.    The Effective Denial eschews the actual factual evidence in the administrative record and is in contradiction to the substantial and credible evidence presented by Verizon and its experts.

200.    The Effective Denial is not in writing and is inconsistent with the criteria specified in the SWF Ordinance and under federal and state law.

201.    The written record does not contain substantial evidence that would lead an objective and reasonable person to deny the Application.

202.    Accordingly, the Effective Denial exceeded Defendants' limited authority and was arbitrary, capricious, unreasonable, and unlawful under New Jersey law, and must be set aside and enjoined on that basis. Further, this Court should exercise its equitable power to issue an order directing Defendants to issue all local permits and approvals required to construct and operate the SWF without the imposition of any further fees related to the installation of the SWF.

**WHEREFORE**, Verizon respectfully demands judgment of this Court on the Counts set forth above as follows:

1.    On Count I, an order and judgment finding and declaring that Defendants unreasonably delayed the Application by failing to act by October 30, 2025, in violation of § 332(c)(7)(B)(ii) of the Act, and mandating that Defendants immediately issue to Verizon all local

permits and approvals required to construct and operate the SWF without the imposition of any further fees related to the installation of the SWF.

2.     On Count II, an order and judgment finding and declaring that the Effective Denial was not supported by substantial evidence contained in the written record in violation of § 332(c)(7)(B)(iii) of the Act, and mandating that Defendants immediately issue to Verizon all local permits and approvals required to construct and operate the SWF without the imposition of any further fees related to the installation of the SWF.

3.     On Count III, an order and judgment finding and declaring that the Defendants have effectively prohibited the provision of Personal Wireless Services in violation of § 332(c)(7)(B)(i)(II) of the Act, and mandating that Defendants immediately issue to Verizon all local permits and approvals required to construct and operate the SWF without the imposition of any further fees related to the installation of the SWF.

4.     On Count IV, an order and judgment finding and declaring that the Defendants have prohibited the provision of Telecommunications Services in violation of § 253(a) of the Act, and mandating that Defendants immediately issue to Verizon all local permits and approvals required to construct and operate the SWF without the imposition of any further fees related to the installation of the SWF, and to limit the recurring annual fees for the SWF to $270.00.

5.     On Count V, an order and judgment finding and declaring that the Effective Denial was arbitrary, capricious, and unreasonable in violation of New Jersey law, and mandating that Defendants immediately issue to Verizon all local permits and approvals required to construct and operate the SWF without the imposition of any further fees related to the installation of the SWF.

6.    On all Counts, an order: (1) granting permanent injunctive relief prohibiting Defendants from taking any further action that would prohibit or have the effect of prohibiting Verizon from providing Personal Wireless Services and Telecommunications Services to the Township; and (2) mandating the disgorgement and return of the fees paid by Verizon that are in excess of the FCC presumptive limits, plus interest from the date that Verizon submitted payment for such fees, and awarding Verizon its costs, expenses, and attorney's fees, and any and all other damages and interest to which Verizon is lawfully entitled, together with such other and further relief at law or equity as the Court deems just and proper.

Dated:  Tarrytown, New York
       November 26, 2025                  **SNYDER & SNYDER, LLP**

                                            By: /s/ *Robert D. Gaudioso*
                                               Robert D. Gaudioso, Esq.
                                               Jonathan D. Kaufman, Esq.
                                             94 White Plains Road
                                             Tarrytown, New York 10591
                                           (914) 333-0700
                                           rgaudioso@snyderlaw.net
                                           jkaufman@snyderlaw.net
                                           *Attorneys for Plaintiff*

## L. CIV. R. 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2 and 28 U.S.C. § 1746, the undersigned member of the bar of this Court hereby declares that the matter in controversy is not presently the subject of any other action pending in any other Court, or of any pending arbitration or administrative proceeding.

SNYDER & SNYDER, LLP

By: */s/ Robert D. Gaudioso*
    Robert D. Gaudioso, Esq.
    94 White Plains Road
    Tarrytown, New York 10591
    (914) 333-0700